ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
    – and –
PAUL J. GELLER
STUART A. DAVIDSON
CULLIN A. O'BRIEN
MARK J. DEARMAN
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT LIEBERMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>   vs.<br><br>SONY COMPUTER ENTERTAINMENT AMERICA LLC and SONY NETWORK ENTERTAINMENT INTERNATIONAL LLC,<br><br>                Defendants. | No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR:<br><br>(1) BREACH OF EXPRESS WARRANTY;<br>(2) NEGLIGENCE;<br>(3) VIOLATIONS OF FLA. STAT. §501.201, *et seq.*;<br>(4) VIOLATIONS OF CAL. BUS. & PROF. CODE §§17200, *et seq.* AND 17500, *et seq.*;<br>(5) VIOLATIONS OF CAL. CIVIL CODE §1798.80, *et seq.*;<br>(6) BREACH OF IMPLIED CONTRACT<br><br>DEMAND FOR JURY TRIAL |

1   Plaintiff Scott Lieberman ("Plaintiff"), by his undersigned attorneys, on behalf of himself and

2   members of the Classes (as defined below), brings this action against defendants Sony Computer

3   Entertainment America LLC and Sony Network Entertainment International LLC (collectively,

4   "Sony" or "Defendants") and alleges the following upon information and belief, except as to those

5   allegations which pertain to the named Plaintiff (which are alleged on personal knowledge), as

6   follows:

7   **NATURE OF THE ACTION**

8   1.    This class action is brought against Defendants for equitable (injunctive and/or

9   declaratory) relief, breach of express warranty, negligence, gross negligence, breach of implied

10  contract, negligence per se, and violation of Florida's Deceptive and Unfair Trade Practices Act,

11  Fla. Stat. §501.201, *et seq*. and violations of California's Business & Professions Code §17200 and

12  §17500, as well as similar deceptive trade practices statutes and consumer protection statutes in

13  effect in other states nationwide (collectively, the "Unfair Trade Practices Statutes").

14  2.    Plaintiff and Class members utilized PlayStation® game consoles ("PlayStation"),

15  and the online features offered via the PlayStation® Network or Qriocity (Collectively "PSN") , to

16  order on-line content or play online games.[1]  As such, Plaintiff and Class members were required to

17  provide Defendants with information that was non-public, personal and confidential.  This is a class

18  action complaint arising from Defendants' improper, reckless, and negligent failure to protect or

19  safeguard the personal, private, non-public, financial, and sensitive information (collectively

20  "Confidential Information") of Plaintiff and the Class members he seeks to represent.  Plaintiff and

21  the Class members have an interest in maintaining the privacy of their Confidential Information and

22  have a reasonable expectation that Defendants would not place at risk or fail to safeguard their

23  Confidential Information.

24

25

26  [1]    Qriocity (pronounced as curiosity) is a trading name for Sony's streaming music, games,
27  e-books and video and on demand services.  *See* http://www.guardian.co.uk/technology/
    2010/sep/01/sony-qriocity-streaming-music-video (last visited April 27, 2011).

28

CLASS ACTION COMPLAINT                                                              - 1 -

3.     Defendants' failure to maintain adequate measures to protect Plaintiff and the Class members' Confidential Information, caused the compromise of Confidential Information of millions of Sony PSN Users.  Defendants acknowledge that 10 million of the accounts had credit card numbers attached.[2]  Others have speculated that the information of as many as 77 Million Sony PSN users were compromised.[3]  If so, this will be the largest Internet-based security breach in the history of the United States.

4.     PlayStation was the first video game console to ship 100 million units after 9 years of its initial launch, while its successor, PlayStation 2, is the best-selling console to date having reached over 150 million units sold as of January 31, 2011, and Sony's current console, PlayStation 3, has sold over 47.9 million consoles worldwide as of December 31, 2010.[4]

5.     Upon information and belief, Defendants were negligent in failing to take the appropriate measures to protect the Confidential Information that was entrusted by Plaintiff and the Class members to Defendants, including, but not limited to, failing to maintain proper and adequate redundant systems, failing to encrypt or properly encrypt the data, and failing to establish adequate firewalls to handle an intrusion.

6.     Moreover, subsequent to Defendants' discovery of this massive security breach, Defendants failed to timely inform Plaintiff or Class members whose Confidential Information was compromised such that Plaintiff and Class members could make an informed decision on how to proceed.  Notwithstanding Defendants' knowledge of the security breach, they have failed to provide regular credit monitoring at their expense.  This has caused, and continues to cause, fear and anxiety for the millions of consumers whose information was compromised, including Plaintiff and Class members.

---

[2]    *See* http://www.businessinsider.com/sony-exec-bows-deeply-in-apology-for-security-breach-2011-5 (last visited May 3, 2011).

[3]    *See, e.g.,* http://www.cnbc.com/id/42769019/ Sony_Play_Station_Breach_Involves_70_Million_Subscribers (last visited May 3, 2011).

[4]    *See* http://www.scei.co.jp/corporate/data/bizdataps3_sale_e.html (last visited April 27, 2011).

1        7.     Plaintiff and all other users of PlayStation consoles and the PSN nationwide were

2 further damaged as a result of the disruption of service and loss of data security.

3        8.     This suit seeks actual and/or compensatory damages; restitution, equitable relief,

4 including the replacement and/or recall of the defective PlayStation consoles and the PSN Service;

5 costs and expenses of litigation, including attorneys' fees and all additional relief deemed just and

6 necessary on behalf of Plaintiff and the Classes.

7                                **PARTIES**

8        9.     Plaintiff Scott Lieberman is a resident of Broward County, State of Florida.

9 Plaintiff's Confidential Information was entrusted to Defendants.

10       10.    Defendant Sony Computer Entertainment America LLC (f/k/a Sony Computer

11 Entertainment America Inc.) ("SCEA") is a Delaware limited liability company with its executive

12 offices and principal place of business and corporate headquarters in Foster City, California.

13 Founded in 1994, SCEA is a wholly owned subsidiary of Sony Computer Entertainment Inc.  Its

14 PlayStation brand continues to redefine interactive consumer entertainment with the ground-

15 breaking products that include the PlayStation®3 computer entertainment system, the

16 PlayStation®Move motion controller, the PlayStation®2 system, PSP® and PSP®go handheld

17 entertainment systems, and its online and network services, the PlayStation®Network and

18 PlayStation®Store.  SCEA serves as headquarters for all North American operations and employs

19 over 1,800 people in offices located in the United States.[5]

20       11.    Defendant Sony Network Entertainment International LLC ("SNEI") is a Delaware

21 limited liability company with its executive offices and principal place of business and corporate

22 headquarters in Los Angeles, California.

23

24

25

26

27    [5]     *See* http://www.sony.com/SCA/outline/computer.shtml (last visited on April 27, 2011).

28

**INTRADISTRICT ASSIGNMENT**

12.    A substantial part of the events or omissions which give rise to the claims in this action occurred in the county of San Mateo, and as such this action is properly assigned to the San Francisco division of this Court.

**JURISDICTION AND VENUE**

13.    The Court has original jurisdiction over this matter, pursuant to 28 U.S.C. §1332(d), in that the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action of more than 100 potential class members in which the citizenship of at least one proposed class member is different from that of at least one defendant.

14.    Venue properly lies in this District pursuant to 28 U.S.C. §1391(a), because this is the District in which defendant SCEA is located and a District in which a substantial part of events or omissions giving rise to the claim has occurred.

15.    Venue is further proper based upon Sony's own Terms and Conditions,[6] which read:

> These Terms of Service and all questions relating to the performance, interpretation, breach or enforcement of these Terms of Service, or the rights, obligations and liabilities of you and us under them are *governed by the laws of the State of California*. You agree that all disputes, claims or litigation arising from or related in any way to these Terms of Service and our relationship with you will be *litigated only in a court of competent jurisdiction located in San Mateo County*, State of California. You agree to be subject to personal jurisdiction and venue in that location.

**SUBSTANTIVE ALLEGATIONS**

16.    Defendants represent and advertise the PlayStation console and PSN services as being a powerful and secure gaming system with an online network offering games, music and movies.

17.    The PlayStation consoles with PSN allow users, including Plaintiff and Class members, to play games online and buy content online.  The PSN is an online service with over 69

---

[6]    *See* http://us.playstation.com/support/termsofuse/ (last visited on May 2, 2011).

1    million users worldwide as of January 25, 2011, and comprises an online virtual market, which

2    allows the purchase and download of games and various forms of multimedia.[7]

3    **The Security Breaches**

4         18.    Upon information and belief, between April 17 and April 19, 2011, Defendants

5    became aware of a system-wide security breach of the PSN.  However, it was not until April 26,

6    2011, that Defendants finally began to notify users that Confidential Information had been

7    compromised or "hacked."[8]

8         19.    Defendants, with the use of an online question and answer post, stated, in part, as

9    follows:

10        Q:    What personally identifying information do you suspect has been
          compromised?

11

12        A:    Although we are still investigating the details of this incident, we believe that
          an unauthorized person has obtained the following information provided by
13        PlayStation Network/Qriocity account holders: name, address (city, state, zip),
          country, email address, birth date, PlayStation Network/Qriocity password, login,
          and handle/PSN online ID.   Other profile data may also have been obtained,
14        including purchase history and billing address (city, state, zip).  If an account holder
          has authorized a sub-account for a dependent, the same data with respect to that
15        dependent may have been obtained. ***If an account holder provided credit card data
          through PlayStation Network or Qriocity, it is possible that the credit card number
16        (excluding security code) and expiration date may also have been obtained***.[9]

17        20.    As to credit card compromise, Defendants indicated as follows:

18        While all credit card information stored in our systems is encrypted and there is no
          evidence at this time that credit card data was taken, we cannot rule out the
19        possibility.  If you have provided your credit card data through PlayStation Network
          or Qriocity, out of an abundance of caution we are advising you that your credit card
20        number (excluding security code) and expiration date may have been obtained.  Keep
          in mind, however that your credit card security code (sometimes called a CVC or
21        CSC number) has not been obtained because we never requested it from anyone who
          has joined the PlayStation Network or Qriocity, and is therefore not stored anywhere
22        in our system.

23    _____

24    [7]    *See*   http://www.thesixthaxis.com/2011/01/27/sony-over-69-million-playstation-network-
      accounts/ (last visited April 27, 2011).

25    [8]    *See* http://blog.us.playstation.com/2011/04/26/update-on-playstation-network-and-qriocity/;
26    http://rockstargaming.ucoz.com/news/playstation_network_hacked_your_personal_details_could
      _be_at_risk/2011-04-28-331(last visited April 27, 2011).

27    [9]    *See* http://us.playstation.com/support/answer/index.htm?a_id=2356 (last visited April 27,
28    2011).

21.     Finally, Defendants concede that they will make the site more secure in the future:

Q:     What steps is Sony taking to protect my personal data in the future?

A:     We've taken several immediate steps to add protections for your personal data.  First, we temporarily turned off PlayStation Network and Qriocity services and, second, we are enhancing security and strengthening our network infrastructure. Moving forward, we are initiating several measures that will significantly enhance all aspects of PlayStation Network's security and your personal data, including moving our network infrastructure and data center to a new, more secure location, which is already underway.  We will provide additional information on these measures shortly.

22.     Defendants eventually shut down the entire PSN, thereby preventing Plaintiff and the Class members from buying and downloading games, playing on-line games, and in some cases using off-line based games.

23.     Notwithstanding Defendants' knowledge of the first security breach, and their admission they will make the site more secure on or about April 17, 2011, Sony reported a second compromise on May 3, 2011.  This time, Sony reported "that data including names, addresses, and login and password details attached to 24.6m accounts for its Sony Online Entertainment computer gaming service may have been stolen, as well as information from an 'outdated' 2007 database – including 12,700 non-United States credit or debit card numbers and expiry dates, but not credit-card security codes."[10]

**Defendants' Representations Concerning the Security of PSN**

24.     Defendants represent and advertise that PlayStation and PSN are an exceptionally powerful and secure gaming system and online network, offering games, music and movies to consumers with PlayStation consoles.

25.     Defendants consistently misrepresented they take great care in maintaining the security of personal information and in preventing unauthorized access to it through the use of appropriate technology and internal procedures.[11]

---

[10]     *See* http://www.stuff.co.nz/technology/digital-living/4958004/Sony-confirms-another-breach (last visited May 4, 2011).

[11]     *See* http://www.sony.com/terms.shtml (last visited April 27, 2011).

26.     Defendants' adopted a Privacy Policy, which applies to all users:

We strive to take reasonable measures to protect the confidentiality, security, and integrity of the personal information collected from our website visitors.  Personal information is stored in secure operating environments that are not available to the public and that are only accessible to authorized employees.  In addition, Sony Online Services use industry-standard encryption to prevent unauthorized electronic access to sensitive financial information such as your credit card number.  We also have security measures in place to protect the loss, misuse, and alteration of the information under our control.[12]

27.     Upon information and belief, Defendants were negligent in failing to take the appropriate measures to protect Plaintiff and Class members' Confidential Information, in many ways, including but not limited to failing to maintain proper and adequate redundant systems, failing to properly encrypt the data, and failing to establish adequate firewalls to handle an intrusion.

28.     Defendants also failed to properly provide prompt and adequate warnings of the security breach such that Plaintiff and Class members could make an informed decision on how to proceed.  Notwithstanding Defendants' knowledge of the security breach, they have failed to provide regular credit monitoring at their own expense.  This has caused, and continues to cause fear and anxiety for the millions of consumers whose information was compromised, including Plaintiff and Class members.

29.     Upon information and belief, Class members have begun to experience losses from fraudulent use of their personal data as a result of the security breach.

30.     Thus, Plaintiff and the Class members now face years of constant surveillance and monitoring in order to prevent further loss and damage.

**The Incidence of Synthetic Identity Theft**

31.     The inadequate security measures undertaken by Defendants can further damage Plaintiff and members of the Class through exposure to synthetic identity theft.  Synthetic identity theft is a variation of identity theft, which has become more prevalent in recent years.

---

[12]     *See* http://www.qriocity.com/us/en/legal-privacy.html.

32.     Through synthetic identity theft, identities are completely or partially fabricated.  The most common method is by utilizing a technique or scheme in which a real social security number is combined with a name and birth date other than the ones associated with the number.

33.     The harm that synthetic identity theft can cause stems from the fact that it is more difficult to track than ordinary identity theft.  In many cases, it does not appear on an individual's credit report directly.  Rather, it will appear as an entirely new file with the credit bureaus or as a sub-file to the victim's credit reports.

34.     Consumers can also be impacted if their names become confused with a synthetically-created identity.

35.     Synthetic identity theft is difficult to trace because the blend of information creates an entirely new identity.  As a result, synthetic identity theft can go unnoticed for several years.

36.     Indeed, a person's identity could have been compromised and been used to create a synthetic identity without the victim knowing that the breach of his identity took place and that the damage of the identity took place and/or is ongoing.

37.     Credit monitoring, or even a thorough review of one's credit report, is not likely to uncover synthetic identity theft.  Synthetic identity theft activity is less likely to appear on a consumer's credit report than ordinary – or "true name" – identity theft because the identifying information used to open new credit accounts does not precisely match one particular consumer.  As alleged, if the identifying information does appear, the information is often only linked to the credit file as a sub-file, rather than appearing in (or being linked to) the main report.

38.     Based upon the manner in which credit reporting systems operate, credit monitoring services will generally overlook instances in which a thief uses a different name, date of birth and/or address in conjunction with the consumer's real social security number.

39.     Victimized consumers are left with the difficulty of resolving and sorting out the fictitious information from their own.  What is worse, in some instances, victimized consumers can be forced to absolve themselves of any fraudulent debts.

40.     Moreover, the victim of synthetic identity theft who does not learn that his private information – *e.g.* social security number – was compromised until years after the breach took place cannot then identify the source or origin of the compromise.

**Standard Business Practices for Ensuring Information Safety**

41.     The significant impact identity theft can have on consumers and the extreme financial ramification the failure to secure personal information can cause has led to the enactment of numerous privacy-related laws aimed toward protecting consumer information and disclosure requirements, including, for example: (1) Gramm-Leach-Bliley Act; (2) Fair Credit Reporting Act; (3) Fair and Accurate Credit Transactions Act; (4) Federal Trade Commission Act, 15 U.S.C. §§41-58; (5) Driver's Privacy Protection Act; (6) Health Insurance Portability and Accountability Act; (7) The Privacy Act of 1974; (8) Social Security Act Amendments of 1990; (9) E-Government Act of 2002; and (10) Federal Information Security Management Act of 2002.

42.     The Federal Trade Commission ("FTC") has issued a publication entitled *Protecting Personal Information: A Guide for Business* ("FTC Report").[13]  In this publication, the FTC provides guidelines for businesses on how to develop a "sound data security plan" to protect against crimes of identity theft.  To protect the personal, sensitive information in their files, the FTC Report instructs businesses to follow the following guidelines:

(a)     Understand the vulnerabilities of your computer system and follow the advice of experts in the field;

(b)     Keep an inventory of all computers and laptops where the company stores sensitive data;

---

[13]     *See* http://business.ftc.gov/documents/bus69-protecting-personal-information-guide-business.pdf (last visited April 27, 2011).

CLASS ACTION COMPLAINT                                                                                    - 9 -

1          (c)     Use social security numbers only for required and lawful purposes and do not

2     store these numbers unnecessarily, such as for an employee or customer identification number;

3          (d)     Encrypt the personal information, particularly if the sensitive information is

4     shipped to outside carriers or contractors.  In addition, the business should keep an inventory of all

5     the information it ships;

6          (e)     Do not store sensitive computer data on any computer with an Internet

7     connection unless it is essential for conducting the business;

8          (f)     Use an intrusion detection system for detecting network breaches that is

9     updated frequently to address new types of computer hacking;

10          (g)     Maintain a central log file of security-related information to monitor activity

11     on the network so as to spot and respond to attacks;

12          (h)     Monitor outgoing traffic for signs of a data breach, waiting for unexpectedly

13     large amounts of data being transmitted from your system to an unknown user;

14          (i)     If large amounts of information are being transmitted from the network,

15     investigate to make sure the transmission is authorized;

16          (j)     Have in place and implement a breach response plan;

17          (k)     Check references or do background checks before hiring employees who will

18     have access to sensitive data;

19          (l)     Regularly remind employees of your company's confidentiality and security

20     standards for handling sensitive data to keep customer information secure and confidential;

21          (m)     Know which employees have access to consumers' sensitive personally

22     identifying information, paying particular attention to data like social security numbers and account

23     numbers; and

24          (n)     Have a procedure in place for making sure that workers who leave your

25     employ or transfer to another part of the company no longer have access to sensitive information,

26     terminating their passwords, and collecting keys and identification cards as a part of the check-out

27     routine.

28

CLASS ACTION COMPLAINT                                                                 - 10 -

**Security Breaches Lead to Identity Theft**

43.     As the United States Government Accountability Office noted in a June 2007 report on data breaches ("GAO Report"), more than 570 breaches involving theft of personal identifiers such as social security numbers were reported by the news media from January 2005 through January 2006.[14]

44.     Protection of consumers' private information is obviously critical. Consumers are at the mercy of the security measures or controls utilized by those entities that use or maintain their confidential or private information. Consumers, likewise, have no ability to ascertain whether their private information is being adequately protected or, worse, if their private information has been compromised in any way. Where, as here, consumer information is and has been inadequately protected and the entity maintaining that information conceals the inadequate safety measures and possibility that a breach occurred or is occurring, consumers become highly vulnerable to identity theft.

45.     As defined in the Fair and Accurate Credit Transactions Act of 2003, Pub.L. 108-159, Dec. 4, 2003 ("FACTA") "Identity theft" is a fraud committed or attempted, using a person's identifying information without authority. Generally, identity theft occurs when a person's identifying information is used to commit fraud or other crimes. These crimes include credit card fraud, phone or utilities fraud, bank fraud, and governmental fraud. The FTC has stated that identity theft has been a serious problem in recent years, with approximately 9 million Americans as the victims of identity theft each year.

46.     As noted in the GAO Report, more than 570 breaches involving theft of personal identifiers such as social security numbers were reported by the news media from January 2005 through January 2006. As the GAO Report states, these data breaches involve the unauthorized or unintentional exposure, disclosure, or loss of sensitive personal information, which can include

---

[14]     *See* http://www.gao.gov/new.items/d07737.pdf ( last visited April 27, 2011).

1   personally identifiable information such as social security numbers or financial information such as

2   credit card numbers.

3       47.    In addition, the GAO states that victims of identity theft will face "substantial costs

4   and inconvenience regarding damage to the credit records," as well the damage to their "good

5   name."

6       48.    According to the FTC, identity theft victims must spend countless hours and money

7   repairing damage to their good name and credit record.  Identity thieves use stolen personal

8   information for a variety of crimes, including credit card fraud, phone or utilities fraud, and

9   bank/finance fraud.  In addition, a person whose personal information has been compromised may

10  not see any signs of identity theft for years.

11      49.    According to the GAO, which conducted a comprehensive and extensive study of

12  data breaches, in some cases, stolen data may be held up to a year or more before being used to

13  commit identity theft.  Further, once stolen data has been sold or posted on the web, fraudulent use

14  of that information may continue for years.  As a result, studies that attempt to measure the harm

15  resulting from data breaches cannot necessarily rule out all future harm.

16      50.    Defendants were negligent in failing to take the appropriate measures to protect the

17  Confidential Information that was entrusted by Plaintiff and the Class members to Defendants, in

18  many ways, including but not limited to failing to maintain proper and adequate redundant systems,

19  failing to encrypt or properly encrypt the data, and failing to establish adequate firewalls to handle an

20  intrusion.

21      51.    Moreover, subsequent to Defendants' discovery of this massive security breach,

22  Defendants failed to timely inform Plaintiff or Class members whose Confidential Information was

23  compromised such that Plaintiff and Class members could make an informed decision on how to

24  proceed.  Notwithstanding Defendants' knowledge of the security breach, they have failed to provide

25  regular credit monitoring at their own expense.  This has caused, and continues to cause fear, and

26  anxiety for the millions of consumers, whose information was compromised, including Plaintiff and

27  Class members.

28      52.    All conditions precedent have been met or have been waived.

**CLASS ACTION ALLEGATIONS**

53.     Plaintiff brings this lawsuit on behalf of himself and the proposed Class members under Federal Rule of Civil Procedure 23(b)(2) and (3).  The proposed Classes consist of:

(a)     The "**Multistate Class**": All persons or entities that subscribed to the PlayStation Network or Qriocity service, and suffered a disruption of service and/or breach of security beginning on or about April 17, 2011.

(b)     The **"Florida Class"**:  All persons or entities in the State of Florida that subscribed to the PlayStation Network or Qriocity service, and suffered a disruption of service and/or breach of security beginning on or about April 17, 2011.

54.     Excluded from the Classes are Defendants, including any entity in which Defendants have a controlling interest, or which is a parent or subsidiary of, or which is controlled by, Defendants, and the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, or assigns of Defendants.

55.     The members of the Classes are so numerous that joinder of all members is impracticable.  The exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery.  Plaintiff believes, however, that there are in excess of five million members of the proposed Classes, including both current and past accountholders and members of their families who may have been named as beneficiaries or joint accountholders and whose Confidential Information was entrusted, either directly or indirectly, to Defendants.

56.     Common questions of law and fact exist as to all Class members and predominate over any questions which affect only individual Class members.  These common questions of law and fact include:

(a)     whether Defendants improperly, recklessly, or negligently subjected the private or Confidential Information of Plaintiff and members of the Classes to inadequate protection;

(b)     whether Defendants failed to exercise the requisite standard of care to protect the Confidential Information of Plaintiff and members of the Classes;

(c)     whether Defendants took reasonable measures to safeguard the Confidential Information of Plaintiff and members of the Classes;

1        (d)      whether Defendants owed a duty to Plaintiff and members of the Classes to

2  protect their Confidential Information;

3        (e)      whether Defendants breached their duties or obligations to Plaintiff and the

4  Classes;

5        (f)      whether Defendants were grossly negligent in the manner in which they

6  breached their duties or obligations to Plaintiff and the Classes;

7        (g)      whether Defendants acted in reckless disregard of the duties or obligations

8  owed to Plaintiff and the Classes;

9        (h)      whether Plaintiff and the Classes have been charged fees by Defendants for

10  privacy safeguarding services which were not provided;

11        (i)      whether Defendants have been unjustly enriched through their conduct

12  toward Plaintiff and members of the Classes;

13        (j)      whether the laws of the State of Florida and California, and to the extent

14  applicable, substantially similar laws of other states, were violated by Defendants, by engaging in the

15  acts or omissions alleged and described herein; and

16        (k)      whether Plaintiff and the Classes have sustained damages, and, if so, what is

17  the proper measure of damages.

18      57.      Plaintiff's claims are typical of the claims of the Classes he seeks to represent in that

19  Plaintiff and each Class member sustained, and continues to sustain, damages arising from

20  Defendants' wrongdoing.  Plaintiff's damages, as well as the damages of each Class member, were

21  caused by Defendants' wrongful conduct as alleged herein.

22      58.      Plaintiff will fairly and adequately protect the interests of those Class members he

23  seeks to represent and has no interests that are antagonistic to the interests of any other Class

24  member.  Plaintiff has retained counsel who have substantial experience and success in complex

25  litigation, including the litigation of class actions and consumer protection claims, including privacy

26  protection claims in the class action context.

27      59.      A class action is superior to other available methods for the fair and efficient

28  adjudication of this controversy, since joinder of all the individual Class members is impracticable.

CLASS ACTION COMPLAINT              - 14 -

1  Furthermore, because the damages suffered, and that may continue to be suffered, by each individual

2  Class member may be relatively small, the expense and burden of individual litigation would make it

3  very difficult or impossible for individual Class members to redress the wrongs done to each of them

4  individually and the burden imposed on the judicial system would be enormous.

5      60.    In addition, the prosecution of separate actions by the individual Class members

6  would create a risk of inconsistent or varying adjudications with respect to individual Class

7  members, which would establish incompatible standards of conduct for Defendants.  In contrast, the

8  conduct of this action as a class action presents far fewer management difficulties, conserves judicial

9  resources and the parties' resources, and protects the rights of each Class member.

10                                    **COUNT I**

11    **For Breach of Express Warranty on Behalf of Plaintiff, the Florida Class**
      **and the Multistate Class**

12     61.    Plaintiff Lieberman, individually, and the members of the Florida Class and the

13  Multistate Class (collectively "Plaintiff and the Class") repeat and reallege the allegations in ¶¶1-60 as if

14  fully set forth herein.

15     62.    Defendants expressly represented and warranted to Plaintiff and the Class that their

16  Confidential Information would be protected.

17     63.    The protection and security of Confidential Information was and is confirmed and

18  promised, for example, through Defendants' Privacy Policy as set forth above.

19     64.    Nevertheless, absent the knowledge or consent of Plaintiff and the Class, Defendants

20  allowed their Confidential Information to be exposed and unsecured.  The disclosure of customers'

21  Confidential Information is in direct breach of Defendants' express warranty.

22     65.    As a direct and proximate result of Defendants' improper, reckless or negligent

23  course of conduct, Plaintiff and the Class suffered harm.  In turn, Plaintiff and the Class are entitled

24  to damages in an amount to be proven at trial (or Plaintiff and the Class were irreparably harmed by

25  Defendants' conduct).

26

27

28

CLASS ACTION COMPLAINT                                                          - 15 -

## COUNT II

### For Negligence on Behalf of Plaintiff,
### the Florida Class and the Multistate Class

66.     Plaintiff Lieberman, individually, and the members of the Florida Class and the Multistate Class (collectively "Plaintiff and the Class") repeat and reallege the allegations in ¶¶1-60 as if fully set forth herein.

67.     At all material times, Defendants owed a duty to Plaintiff and the Class to act with the ordinary care of reasonableness with respect to all aspects of the services promised, including, but not limited to, the protection and privacy of the Confidential Information of Plaintiff and the Class.

68.     The standard of care owed to Plaintiff and the Class arises from common law, as well as from secondary sources, including, for example, representations made by Defendants, industry standards, as well as related laws and regulations.

69.     Defendants failed to adequately protect or safeguard the Confidential Information of Plaintiff and the Class, and failed to establish procedures to prevent and detect the improper dissemination of that Confidential Information.

70.     Defendants failed to adequately establish procedures to notify the users of PSN in the event of a compromise.

71.     Defendants' mishandling of PSN users Confidential Information constitutes a deviation from the standard of care owed to Plaintiff and the Class.

72.     As a proximate cause of Defendants' negligence, Plaintiff and the Class have been damaged and injured as described herein.

## COUNT III

### For Gross Negligence/Reckless Disregard on
### Behalf of Plaintiff, the Florida Class and the Multistate Class

73.     Plaintiff Lieberman, individually, and the members of the Florida Class and the Multistate Class (collectively "Plaintiff and the Class") repeat and reallege the allegations in ¶¶1-60 as if fully set forth herein.

74.     At all times, Defendants knew that PSN did not contain adequate security measures and that, as a result, the Confidential Information of Plaintiff and the Class has been and is vulnerable to compromise.

75.     Defendants knowingly failed to adequately protect or safeguard the Confidential Information of Plaintiff and the Class, knowingly failed to establish procedures to prevent and detect the improper dissemination of that Confidential Information, and knowingly failed to alert or disclose that users' private information was at risk for exposure and compromise.

76.     Defendants knowingly failed to promptly notify Plaintiff and the Class of the subject security breach.

77.     Defendants, therefore, have grossly deviated from the standard of care owed Plaintiff and the Class in their knowing mishandling of customers' Confidential Information.

78.     Alternatively, Defendants' deviation from the standard of care owed to Plaintiff and the Class was reckless and willful and was undertaken to enhance profitability.

79.     As a proximate cause of Defendants' gross negligence and/or reckless conduct, Plaintiff and the Class have been damaged and injured as described herein.

**COUNT IV**

**For Negligence Per Se on Behalf of Plaintiff,
the Florida Class and the Multistate Class**

80.     Plaintiff Lieberman, individually, and the members of the Florida Class and the Multistate Class (collectively "Plaintiff and the Class") repeat and reallege the allegations in ¶¶1-60 as if fully set forth herein.

81.     Statutes and regulations require corporations, such as Defendants, that experience a data breach or compromise of customers' private and confidential information to promptly notify affected consumers.  Fla. Stat. §817.5681, for example, requires business persons maintaining computerized data that includes personal information (*e.g.*, social security numbers, credit or debit card numbers, or financial account numbers) to provide notice of breaches of system security. Likewise, California Civil Code §1798.82, requires defendants to timely disclose any breach of security to Plaintiff and the Class whose personal information was, or is reasonably believed to have

1    been, acquired by unauthorized persons. Defendants unlawfully breached this duty by, amongst other

2    ways, delay and failure to properly disclose.

3         82.     Defendants failed to timely notify Plaintiff or the Class that their Confidential

4    Information had been compromised (and remains at risk to be compromised) through inadequate

5    security or protection measures.

6         83.     As a proximate cause of Defendants' negligence, Plaintiff and the Class have been

7    damaged and injured as described herein.

8 <div align="center">**COUNT V**</div>

9 <div align="center">**For Violation of Florida's Deceptive and Unfair Trade Practices Act,**
10     **Fla. Stat. §501.201, *et seq*., and the Unfair Trade Practices Statutes**
**on behalf of Plaintiff and the Florida Class**</div>

11         84.     Plaintiff Lieberman, individually, and the members of the Florida Class repeat and

12    reallege each and every allegation set forth in ¶¶1-60 above as if fully set forth herein.

13         85.     At all relevant times, Defendants provided goods and/or services and thereby were

14    engaged in trade or commerce, as defined by Fla. Stat. §501.203.

15         86.     At all relevant times, Plaintiff and the Florida Class members were consumers, as

16    defined by Fla. Stat. §501.203.

17         87.     Defendants were aware that their customers provided confidential and non-public

18    information and personally identifiable material in connection with the use of PlayStation consoles

19    and the PSN.

20         88.     Users expected, and Defendants assured, that Confidential Information and non-

21    public information maintained by Defendants would be protected and that it would not be disclosed

22    to third parties.

23         89.     Defendants engaged in unfair or deceptive acts and practices by knowingly permitting

24    the Confidential Information to be exposed through a system that was unsecure or had inadequate

25    safeguards, resulting in the dissemination of personal and private information of customers in direct

26    violation of the Unfair Trade Practices Statutes.

27         90.     Defendants engaged in unfair or deceptive acts and practices by failing to timely

28    notify Plaintiff and the Florida Class of the security breach and compromise.

CLASS ACTION COMPLAINT                                              

91.     Defendants' practice and course of conduct, as alleged herein, is likely to mislead – and has misled – the consumer acting reasonably in the circumstances, to the consumer's detriment.

92.     Further, Defendants have engaged in an unfair practice that offends established public policy, and is one that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to customers.

93.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Florida Class members suffered actual damages and request a corresponding award of damages against Defendants, as authorized by such statutes.

94.     In the alternative, Plaintiff and the Florida Class members have suffered irreparable harm for which there is no adequate remedy at law as a result of Defendants' conduct and Plaintiff and the Florida Class members are entitled to appropriate temporary and permanent injunctive relief, as authorized and provided by such statutes.  Plaintiff and the Florida Class members are further entitled to preliminary or other relief as provided by such statutes, including statutory damages, punitive damages, costs and reasonable attorneys' fees.

## COUNT VI

**For Unlawful Business Acts and Practices in Violation of California
Business and Professions Code §17200.** *et seq.* **on behalf of Plaintiff,
the Florida Class and the Multistate Class**

95.     Plaintiff Lieberman, individually, and the members of the Florida Class and the Multistate Class (collectively "Plaintiff and the Class") repeat and reallege the allegations in ¶¶1-60 as if fully set forth herein.

96.     Plaintiff brings this cause of action on behalf of the Class members as they suffered injury in fact and lost money or property as a result of such unfair competition.

97.     Defendants have engaged in unfair, unlawful and fraudulent business practices as set forth above.  Defendants' acts and practices have and/or are likely to deceive members of the consuming public.

98.     Defendants' acts and practices are unlawful because they violate Cal. Civil Code §§1572, 1709, 1710, 1770(a)(5), 1770(a)(7) and 1770(a)(9).  Defendants' acts and practices are also

1  unlawful because they violate Cal. Bus. & Prof Code §17500, *et seq*.  Defendants unlawful and unfair

2  business practices include, without limitation, defendants' unlawful negligence and violations of

3  California Const., Art. I, §I; Cal. Civil Code §§1798.81, 1798.81.5 and 1798.82; Finance Code

4  §§4052.5 and 4057, the California Credit Reporting Act, the prohibition against unreasonable penalties

5  contained in Cal. Civil Code §1671, and other laws of the State of California.

6         99.    Defendants' acts, omissions, misrepresentations, practices and non-disclosures

7  alleged herein also constitute "unfair" business acts and practices within the meaning of Business &

8  Professions Code §17200, *et seq*., in that their conduct is substantially injurious to consumers,

9  offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the

10  conduct outweighs any alleged benefits attributable to such conduct.  This conduct constitutes

11  violations of the unfair prong of California Business & Professions Code §17200, *et seq*.

12         100.   As stated in the complaint, Defendants' failed to implement and maintain security

13  procedures and practices reasonably designed to protect the Confidential Information of consumers,

14  including, without limitation, Plaintiff and the Class.  The aforementioned breach of security was

15  reasonably foreseeable.  Defendants, through their business relationship with Plaintiff and the Class, and

16  with each other, assumed the duty to keep the Confidential Information and other non-public information

17  of Plaintiff and the Class that is in their possession private and secure.  By their acts and omissions

18  described herein, Defendants breached this duty.  This conduct constitutes violations of the unfair

19  prong of California Business & Professions Code §17200, *et seq*.

20         101.   Defendants were in a special and fiduciary relationship with the Plaintiff and the Class

21  due to their entrustment with Confidential Information credit card account and other non-public

22  information.  By reason of said special and fiduciary relationship, Defendants had a duty of care to use

23  reasonable means to keep the credit card account and other non-public information of Plaintiff and the

24  Class that is in their possession private and secure, and to inform Plaintiff and the Class forthwith when

25  any compromise of the security of such information occurred.  Defendants have unlawfully breached

26  these duties.  This conduct constitutes violations of the unfair prong of California Business &

27  Professions Code §17200, *et seq*.

28

CLASS ACTION COMPLAINT                                                          - 20 -

102.    Pursuant to the right to privacy insured by California Const., Art. I, §I, Defendants had a duty to use reasonable care to prevent the unauthorized access, use or dissemination of the credit card account and other non-public information of Plaintiff and the Class herein.   Upon information and belief, Defendants unlawfully breached said duty.

103.    Pursuant to California Civil Code §1798.81.5, Defendants had a duty to implement and maintain reasonable security procedures and practices with respect to the credit card account and other non-public information of consumers, including, without limitation, Plaintiff and the Class herein, in order to protect such information from unauthorized access, use or disclosure.   On information and belief, Defendants unlawfully breached said duty.   This conduct constitutes violations of the unfair prong of California Business & Professions Code §17200, *et seq*.

104.    Upon information and belief, the Plaintiff's and the Class's information that was disclosed to unauthorized third parties, due to the breach of Defendants' security was not properly encrypted.   Pursuant to California Civil Code §1798.82, Defendants had, and continue to have, a duty to timely disclose the breach of security to Plaintiff and the Class whose personal information was, or is reasonably believed to have been, acquired by unauthorized persons.   Defendants unlawfully breached this duty by, amongst other ways, delay and failure to timely disclose.   This conduct constitutes violations of the unfair prong of California Business & Professions Code §17200, *et seq*.

105.    Pursuant to the California Financial Information Privacy Act, California Finance Code §4050, *et seq*., Defendants breached unlawfully the requirement to prevent the unauthorized disclosure of non-public personal information of Plaintiff and the Class to unaffiliated third parties.   Fin. C. §4052.5.   Defendants also unlawfully breached their duty to refrain from negligently disclosing non-public information pertaining to Plaintiff and the Class to third parties.   Fin. C. §4057.

106.    Pursuant to the California Constitutional Right to Privacy and California law there is an explicit public policy, creating an affirmative and continuing obligation on Defendants herein, to respect consumers' privacy and to provide reasonable consumer computer data security under the circumstances, including, without limitation, to Plaintiff and the Class, and to protect the security and confidentiality of their non-public personal information.   Such duties include, without limitation, the

1   duty to ensure security, protect against anticipated threats, and protect against unauthorized access.

2   Defendants, on information and belief, breached said duties.

3      107. Defendants' conduct caused and continues to cause substantial injury to Plaintiff and

4   the Class. Plaintiff and the Class suffered injury in fact and have lost money as a result of

5   Defendants' unfair conduct.

6      108. Defendants have thus engaged in unlawful, unfair and fraudulent business acts and

7   practices and false advertising, entitling Plaintiff and the Class to judgment and equitable relief

8   against Defendants, as set forth in the Prayer for Relief.

9   <div align="center">

**COUNT VII**

**For Unlawful Business Acts and Practices in Violation of California
Business and Professions Code §17500, *et seq*. on behalf of Plaintiff,
the Florida Class and the Multistate Class**
</div>

12     109. Plaintiff Lieberman, individually, and the members of the Florida Class and the

13  Multistate Class (collectively "Plaintiff and the Class") repeat and reallege the allegations ¶¶1-60 as

14  if fully set forth herein.

15     110. Plaintiff and the Class have suffered injury in fact and have lost money or property as

16  a result of Defendants' violation of Bus. & Prof Code §17500, *et seq*.

17     111. Since 2006, Defendants have engaged in advertising and marketing to the public and

18  offered the PlayStation consoles and PSN service for sale throughout the United States, including

19  California.

20     112. Defendants violated and continue to violate Bus. & Prof Code §17500 by advertising

21  and marketing as alleged herein with intent to directly or indirectly induce the purchase of the

22  PlayStation consoles and PSN service. Likewise, Defendants' advertisements and marketing

23  representations regarding the technical and other characteristics of the PlayStation consoles and PSN

24  service are false, misleading and deceptive as set forth more fully above.

25     113. At the time Defendants made and disseminated the statements alleged herein, they

26  knew or should have known that the statements were untrue or misleading, and acted in violation of

27  Bus. & Prof. Code §17500, *et seq*.

28

CLASS ACTION COMPLAINT               - 22 -

114.    Defendants actively concealed their knowledge that the PlayStation consoles and PSN service contained inherent defects.

115.    Plaintiff, on behalf of himself and on behalf of the Class seek restitution, disgorgement, injunctive relief and all other relief allowable under §17500, *et seq*.

### COUNT VIII

**For Violations of California Civil Code §1798.80, *et.seq* on behalf of Plaintiff, the Florida Class and the Multistate Class**

116.    Plaintiff Lieberman, individually, and the members of the Florida Class and the Multistate Class (collectively "Plaintiff and the Class") repeat and reallege the allegations in ¶¶1-60 as if fully set forth herein.

117.    Defendants unreasonably delayed informing anyone about the breach of security of Plaintiff's and the Class's confidential and non-public information after they knew it had occurred.

118.    Upon information and belief, the majority of the Class members have not been directly informed that the breach of security of their confidential and non-public information occurred.

119.    Defendants failed to disclose to Plaintiff and the Class, without unreasonable delay, the breach of security of their unencrypted, or not properly and securely encrypted, confidential and non-public information when they knew or reasonably believed such information had been compromised.

120.    Upon information and belief, no law enforcement agency instructed Defendants that notification to Plaintiff or the Class would impede investigation.

121.    As a direct and proximate result of Defendants' acts and omissions described herein, Plaintiff and the Class have suffered damages including, but not limited to, loss of and invasion of privacy, loss of property, loss of money, loss of control of their confidential and non-public information, fear and anxiety of fraud and loss of money and control over their Confidential Information, and the burden of monitoring their financial and credit accounts and taking whatever actions necessary to protect themselves from fraud, the potential for fraud, money loss, or injury to

1  credit reputation. The amount of such damages will be proven at trial, but is in excess of the

2  minimum jurisdiction of this Court.

3  <center>**COUNT IX**</center>

4  <center>**For Breach of Implied Contract on Behalf of Plaintiff, the Florida Class**
<center>**and the Multistate Class**</center>

5
6      122.    Plaintiff Lieberman, individually, and the members of the Florida Class and the

   Multistate Class (collectively "Plaintiff and the Class") repeat and reallege the allegations in ¶¶1-60 as if
7
   fully set forth herein.
8
9      123.    The private and Confidential Information of Plaintiff and the Class was provided to

10  Defendants in order for Plaintiff and the Class to purchase online content and play online games.

11  Implicit in this transaction was a covenant for Defendants to undertake reasonable efforts to

12  safeguard, protect and secure this information. Also implicit in this transaction was a covenant for

13  Defendants to promptly notify their users in the event that this information was compromised or at

   risk.
14
15      124.    Defendants' recognition of these covenants and obligations is implicit in their

16  representations to Plaintiff and the Class regarding the importance of maintaining strong security

   measures to protect Confidential Information.
17
18      125.    This implied contract required Defendants to safeguard the private and Confidential

19  Information of Plaintiff and the Class and prevent that information from being compromised and/or

   stolen.
20
21      126.    Defendants did not safeguard and protect the private and Confidential Information of

22  Plaintiff and the Class and failed to adequately prevent that information from being compromised or

   available for unauthorized dissemination.
23
24      127.    As a result, Defendants breached their implied contract with Plaintiff and the Class,

25  thereby causing injury to Plaintiff and the Class.

26
27
28

**COUNT X**

**For Bailment on Behalf of Plaintiff, the Florida Class and the Multistate Class**

128.    Plaintiff Lieberman, individually, and the members of the Florida Class and the Multistate Class (collectively "Plaintiff and the Class") repeat and reallege the allegations in ¶¶1-60 as if fully set forth herein.

129.    Plaintiff and the Class delivered and entrusted their Confidential Information to Defendants for the sole purpose of using their PlayStation consoles on the PSN.

130.    During the time of bailment, Defendants owed Plaintiff and the Class a duty to safeguard this information properly and maintain reasonable security procedures and practices to protect such information.  As alleged herein, Defendants' breached this duty.

131.    As a result of these breaches of duty, Plaintiff and the Class have been harmed as alleged herein.

**COUNT XI**

**For Equitable (Injunctive and/or Declaratory) Relief on Behalf of Plaintiff, the Florida Class and the Multistate Class**

132.    Plaintiff Lieberman, individually, and the members of the Florida Class and the Multistate Class (collectively "Plaintiff and the Class") repeat and reallege the allegations in ¶¶1-60 as if fully set forth herein.

133.    Account information of Plaintiff and the Class was and is being maintained by Defendants.

134.    Through the relationship between Plaintiff and Defendants, and the Class and Defendants, Defendants were obligated to maintain the privacy of their users' Confidential Information.

135.    During the Class Period, Defendants breached these obligations by failing to protect the Confidential Information and other private information of Plaintiff and the Class.

136.    Instead, Defendants allowed the account information of Plaintiff and the Class be at risk for compromise.

1    137.    No adequate remedy at law exists to address the exposure of the Confidential

2    Information of Plaintiff and the Class due to Defendants' actions or inactions.

3    138.    Accordingly, Plaintiff, on behalf of himself and the Class, requests the following

4    equitable relief:

5    (a)    That Defendants be enjoined to remedy the known deficiency in the security

6    protocol of the PSN;

7    (b)    That Defendants notify their users of the security breach and the risk that

8    Confidential Information may have been stolen or compromised;

9    (c)    That Defendants undertake the necessary steps to remedy the exposure of

10   Confidential Information of Plaintiff and the Class that was left vulnerable to compromise;

11   (d)    That Defendants disclose to Plaintiff and the Class, insofar as is possible, the

12   full list of users whose Confidential Information was compromised; and

13   (e)    That Defendants be determined and declared to be financially responsible for

14   the costs and expenses of remedying the exposure of the Confidential Information of Plaintiff and

15   the Class, including, for example, the cost of monitoring and protection against identify theft, credit

16   card fraud and the like.

17   **PRAYER FOR RELIEF**

18   WHEREFORE, Plaintiff requests the following relief, on behalf of himself and the Classes:

19   A.    Certifying the Classes as requested herein, appointing Plaintiff Lieberman as Class

20   Representative and Plaintiff's counsel as Class Counsel;

21   B.    An award of equitable, injunctive and declaratory relief described herein, including

22   judicial supervision of Defendants and a judicial determination of the rights and responsibilities of

23   the parties;

24   C.    Declaring the actions complained of herein to be in violation of the statutory and

25   common laws set forth above;

26   D.    Enjoining and restraining Defendants from any further acts in violation of the

27   statutory and common laws set forth above;

28

1      E.    Requiring Defendants to take the necessary measures to adequately secure the

2  PlayStation and PSN and protect the Confidential Information of their users;

3      F.    Awarding Plaintiff and the proposed Class members damages, including, but not

4  limited to, the cost of identity theft protection for Plaintiff and Class members;

5      G.    Disgorgement and restitution;

6      H.    An award of punitive damages, jointly and severally, against Defendants;

7      I.    An award of prejudgment and post-judgment interest;

8      J.    An award of costs, including, but not limited to, discretionary costs, attorneys' fees

9  and expenses incurred in pursuing this case; and

10      K.    Any other and further equitable relief this Court deems just and proper.

11            **JURY DEMAND**

12      Plaintiff demands a trial by jury.

13  DATED:  May 4, 2011        ROBBINS GELLER RUDMAN

14                    & DOWD LLP
                  SHAWN A. WILLIAMS

16                    SHAWN A. WILLIAMS

18  Post Montgomery Center
One Montgomery Street, Suite 1800

19  San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

21  ROBBINS GELLER RUDMAN
  & DOWD LLP

22  PAUL J. GELLER
STUART A. DAVIDSON

23  CULLIN A. O'BRIEN
MARK J. DEARMAN

24  120 E. Palmetto Park Road, Suite 500|
Boca Raton, FL  33432

25  Telephone:  561/750-3000
561/750-3364 (fax)

1

2      ROBBINS GELLER RUDMAN
         & DOWD LLP
3      SAMUEL H. RUDMAN
       MARK S. REICH
       58 South Service Road, Suite 200
4      Melville, NY  11747
       Telephone:  631/367-7100
5      631/367-1173 (fax)

6      Attorneys for Plaintiff

7      Document1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT                                    - 28 -